# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

WIDEVOICE COMMUNICATIONS, INC.,  )
)
        Plaintiff, )
)    2:12-cv-00467-GMN -VCF
v. )
)    **O R D E R**
QWEST COMMUNICATIONS )
COMPANY, LLC, )
)
        Defendant. )
)

Before the court is movant Qwest Communications Company, LLC's ("Qwest") Motion To Compel Subpoenas To WideVoice Communications, Inc. (#1). WideVoice Communications, Inc ("WideVoice") filed an Opposition (#4), and Qwest filed a Reply (#11).

**<u>Background</u>**

Qwest filed its second amended complaint in the underlying action in the Southern District of Iowa, Central Division ("Iowa action")(Case No. 07-cv-00078-JEG-RAW) on December 15, 2010. (#1-1 Exhibit 3). Qwest asserts that it "seeks to recover damages caused by the [d]efendants for engaging in their illegal, unfair and fraudulent practice of billing millions of dollars in purported terminating switched access charges to Qwest, and other long distant carriers, that the local exchange carrier [d]efendants' ("LEC Defendants") interstate and intrastate tariffs do not authorize or contemplate, and to enjoin the LEC Defendants from issuing invoices to Qwest containing such charges for calls delivered to telephone numbers assigned to Free Calling Service Companies ("FCSCs") going forward." *Id.* Relevant to the issue before this court, Qwest names Great Lakes Communication Corp. ("Great Lakes") as an LEC defendant, and Free Conferencing Corporation ("Free Conferencing") as an FCSC defendant. *Id.*

Qwest asserts that the LEC Defendants engage in "traffic pumping," and that the FCC has

"issued several decisions holding traffic pumping schemes illegal, in violation of the Communications Act." (#1). In order to camouflage the illegal nature of these schemes, Qwest asserts, LEC Defendants began rearranging their relationships by creating "intermediate carriers" to "deliver traffic at lower rates than the traffic pumping LEC's tariff rates." *Id.* Qwest alleges that WideVoice was created to serve as an intermediate carrier, and that WideVoice shares management and owners with FCSC defendant Free Conferencing, and now owns Free Conferencing. *Id.* Qwest asserts that WideVoice is able to deliver calls at lower rates because "it enters into contracts with local carriers in which it does not have to pay the local carrier's terminating switched access charges at tariff rates; instead WideVoice gets preferential terms in violation of 47 U.S.C. § 202." *Id.* Upon information and belief, Qwest asserts that WideVoice has a relationship with LEC defendant Great Lakes, and that on WideVoice's website, it identifies Great Lakes as one of its LEC relationships. *Id.*

On November 28, 2011, Qwest served WideVoice with a subpoena to produce documents and a subpoena to testify at a deposition in connection with the Iowa action. *Id.* The deposition was scheduled for February 9, 2012, and was concerning topics related to the subpoenaed documents. *Id.* Qwest also served WideVoice with a copy of the protective order (#1-4 Exhibit 25) governing confidential discovery in the Iowa action for WideVoice's signature. *Id.* On December 14, 2011, WideVoice served Qwest with its responses and objections to the subpoena for documents, wherein WideVoice refused to produce a single document, and asserted two objections: (1) the request violated the amended procedural scheduling order in the Iowa action, and (2) the request is "overbroad, vague, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence." *Id.* WideVoice did not object to producing an individual for the deposition (#4), but Qwest cancelled the deposition, asserting that WideVoice's "refusal to produce documents made the deposition impossible to complete when scheduled." (#11).

**Motion To Compel (#1)**

Pursuant to Federal Rule of Civil Procedure 45(a)(2)(B) and (C), a subpoena for attendance at

2

a deposition or for production or inspection must issue from the court where the deposition is to be taken or where the production or inspection is to be made. Rule 45(c)(2)(B) states that "[a] person commanded to produce documents or tangible things or permit inspection may serve on the party or attorney designated in the subpoena a written objection...," and that the objection must "be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(c)(2)(B). If an objection is served, the party that issued the subpoena "may move the issuing court for an order compelling production or inspection." Fed. R. Civ. P. 45(c)(2)(B)(I).

As WideVoice is a Nevada corporation and this court issued the subpoenas (#1-2) pursuant to Rule 45(a)(2)(B) and (C), Qwest filed the present motion to compel in this court. (#1). Qwest asserts in its motion that WideVoice's objections are untimely and baseless, and asks this court to compel WideVoice to produce the documents requested and to deem its objections waived. *Id.* Qwest also asserts that the subpoenas were timely served pursuant to the Iowa action's procedural schedule, and that the documents sought are relevant and discoverable. *Id.*

**A.  Timeliness Of Qwest's Subpoenas**

On November 10, 2011, the court in the Iowa action issued a text order granting the unopposed motion to amend the procedural schedule, and stating that the fact discovery deadline was extended to February 28, 2012, "except no new interrogatories or document requests shall be served." (#1-3 Exhibit 9). The motion that sought the discovery extension did not mention the issuing of subpoenas or discovery related to third parties. (#1-3 Exhibit 10). On January 16, 2012, the parties in the Iowa action filed an unopposed motion to amend the procedural schedule, seeking to extend discovery until May 29, 2012, and stating that "[u]nder the extension, the parties are allowed to take depositions of parties, serve requests for admissions on parties under Rule 36(a)(1)(B) only, and conduct third-party discovery (including subpoenas and depositions)." (#1-3 Exhibit 11). The court granted this motion on January 17, 2012. (#1-3 Exhibit 12).

Qwest argues that based on the latest amendment to the scheduling order and the fact that the

3

1  "one published case that addresses a similar scheduling order found the deadline for requests for
2  production under Rule 34 did not apply to subpoenas," there "can be no question...that third-party
3  subpoenas, such as those issued to WideVoice, are fully appropriate under the current scheduling order."
4  (#1); See *Smith v. Midland Brake, Inc.,* 162 F.R.D. 683, 686 (D. Kan. 1995). WideVoice opposes the
5  motion to compel, and asserts that Qwest improperly served the Rule 45 subpoenas 18 days after the
6  discovery deadline in the Iowa action. (#4). Despite the fact that the January 17, 2012, amended
7  scheduling order (#1-3 Exhibit 12) permitted serving subpoenas on third-parties, WideVoice argues that
8  "[a]t the time of service, nowhere in the [c]ourt's procedural schedules does it state that the discovery
9  deadlines were limited only to "party discovery."" *Id.*

10  The court finds that the subpoenas were timely and were not in violation of the scheduling order,
11  as the November 10, 2011, order (#1-3 Exhibit 9) was silent as to third-party discovery, and the most
12  recent order *expressly* permitted serving subpoenas on third-parties (#1-3 Exhibit 12). WideVoice's
13  objection is overruled.

14      **B.**    **Timeliness Of WideVoice's Objections**

15          **1.**    **Relevant Law**

16  Absent unusual circumstances, "[a] nonparty's failure to timely make objections to a Rule 45
17  subpoena duces tecum generally requires the court to find that any objections have been waived." *Moon*
18  *v. SCP Pool Corp.,* 232 F.R.D. 633, 636 (C.D. Cal. 2005)(citing *In re DG Acquisition Corp.,* 151 F.3d
19  75, 81 (2nd Cir. 1998). A responding party must establish unusual circumstances and good cause in
20  order for a court to consider the untimely objections. *Concord Boat Corp. v. Brunswick Corp.,* 169
21  F.R.D. 44, 48 (S.D.N.Y. 1996). Courts have found unusual circumstances where: (1) the subpoena is
22  overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a
23  non-party acting in good faith; and (3) counsel for the witness and counsel for the subpoenaing party
24  were in contact concerning the witness' compliance prior to the time the witness challenged the legal
25  basis for the subpoena. *Id.*

26

**2.     Arguments**

Qwest asserts that since WideVoice's objections were received on December 14, 2011, two days late, WideVoice waived its objections and has a "heightened burden to substantiate the legitimacy of its objections. (#1); *See* Fed. R. Civ. P. 45(c)(2)(B)(I). WideVoice "acknowledges that it did not serve its written objections until December 14, 2011," but argues that its failure should not bar consideration of its objections. (#4). WideVoice argues that several circumstances support the court considering its objections: (1) it is a non-party acting in good faith, (2) no prejudice resulted from the two day delay, (3) the subpoena was in violation of the scheduling order, (4) the subpoena is overbroad, objectionable on its face, vague and ambiguous, and seeks production of confidential and proprietary information, and (5) the subpoena was served in the District of Nevada, and neither WideVoice nor this court has any involvement in the "complex and long-standing" Iowa action. *Id.*

Qwest counters WideVoice's last argument by stating that the fact that "the underlying action is pending in another district is not one of the factors considered by courts for excusing lateness in subpoena objections," and pointing out that Rule 45 expressly contemplates subpoenas being issued in districts where the subpoenaed person is subject to service. (#11). Qwest also asserts that WideVoice's statement that it was acting in good faith is belied by the fact that WideVoice was not in contact with Qwest's counsel before the 14 days expired, and that Qwest's counsel had to contact defendant Free Conferencing to ascertain whether WideVoice would be responding and/or producing a deponent. *Id.* Qwest contends that WideVoice had notice that the subpoenas were forthcoming, as Qwest's counsel informed Free Conferencing's then counsel that Qwest intended to subpoena WideVoice, notices of the subpoenas were served on all counsel of record, and, although Free Conferencing and WideVoice are formally organized as separate corporate entities, Qwest understands that WideVoice now owns Free Conferencing and the entities now share counsel, Mr Swier. *Id.* Qwest also asserts that WideVoice does not contend that it was unaware of the forthcoming subpoenas. *Id.*

With regard to WideVoice "disclaiming involvement in the underlying action," Qwest argues

that WideVoice does not claim ignorance to the underlying action, it does not dispute that its affiliate Free Conferencing is a party to that action, and it does not dispute that it has a relationship with at least defendant Great Lakes. *Id.* Qwest asserts that since WideVoice has failed to demonstrate any "unusual circumstances to avoid a waiver of its objections due to lateness," the court should deem WideVoice's objections waived. *Id.*

### 3. Discussion

The court finds that WideVoice's two day delay in serving its objections is excusable. Despite the fact that the court is not persuaded by many of the arguments WideVoice advances[1], the court finds that WideVoice acted in good faith and that the late objections did not impact the Iowa action in such a way that considering the objections would be unjust. *Concord Boat Corp.,* 169 F.R.D. at 48.

### C. Documents Requested/Objections Thereto

"A Rule 45 subpoena must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1), which limits discovery to 'any matter, not privileged, that is relevant to the claim or defense of any party in the pending action...'" *Olde Towne Dev. Group, LLC v. Matthews*, 2009 WL 2021723, *1 (M.D. La. July 9, 2009). Relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes. *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (citation omitted). For discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence. *Id.* "If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served . . ." *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1.

WideVoice asserts that the documents requested are beyond the scope of Rule 26, but that "in an attempt to narrow the issues in this matter, WideVoice would agree to produce some of the requested

---

[1] WideVoice argues that the objections should be considered, among other reasons, because the subpoena is overbroad, objectionable on its face, vague and ambiguous, and seeks production of confidential and proprietary information. (#4). However, a few pages after making this argument, WideVoice agrees to produce a large portion of the discovery sought. *Id.*

6

information..." "to the extent that these materials do not constitute confidential financial information or proprietary information." (#4).  The court hereby orders WideVoice to produce such documents within ten (10) days from the entry of this order.  With regard to WideVoice's concern relating to the confidential or proprietary nature of the information sought, WideVoice shall sign the protective order attached to the subpoenas (#1-4 Exhibit 25) and shall produce all documents as agreed to, including those deemed confidential or proprietary, and designate them either "Confidential" or "Attorneys' Eyes Only" as applicable. *Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 619-20 (C.D.Cal. 2007)(holding that "if defendant truly believes it has "confidential" or "proprietary information" that should be protected by a protective order, it should have entered into a stipulated protective order with plaintiff or filed a motion for a protective order before the date by which it was to respond to plaintiff's requests.").  The court will address the remaining document requests below.

**1. Request No. 1:**  Provide all documents evidencing communications (including but not limited to correspondence or other documentation exchanged) between you and: a. Any Defendant LEC (local exchange carrier); b. Any long distance carrier about delivery of calls to a LEC Defendant; c. Any centralized equal access provider in Iowa (such as Iowa Network Services, INS) for ultimate delivery to a LEC Defendant; d. Any LEC in Iowa; and e. Any FCSC. *Id.*  WideVoice agrees to provide documents responsive to 1(a)-(c), but objects to 1(d) and (e). *Id.*  WideVoice asserts that it should only be required to produce information relating to any **defendant LEC** in the state of Iowa, and that any information relating to non-defendant LECs is not relevant or reasonably calculated to lead to the discovery of admissible evidence. *Id.*  WideVoice also asserts that it should not be required to provide information that relates to **any FCSC** that is "unrelated to the state of Iowa as this information is beyond the scope of the [Iowa action] and is not reasonably calculated to lead to the discovery of admissible evidence." *Id.*

With regard to request 1(d), Qwest asserts that information relating communications between WideVoice and  "any LEC in Iowa" is relevant, because (1) "traffic pumping carriers routinely modify

7

their corporate structure in an attempt to evade the import of their schemes," and that a new entity could exist that is nothing more than a reframed Free Conferencing, (2) Qwest wants to obtain evidence that shows WideVoice targets only carriers involved in traffic pumping and does not serve the broader telecommunications marketplace, (3) prior counsel admitted that material related to all of Iowa is relevant, and (4) WideVoice does not dispute its alleged role in the traffic pumping scheme. (#11). As Qwest intends on demonstrating that WideVoice serves only those carriers involved in the illegal traffic pumping, i.e. the defendant LECs, evidence of communications, or the lack thereof, between WideVoice and any LEC in Iowa is relevant. *Oppenheimer Fund*, 437 U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1. Ordering WideVoice to produce such documents demonstrating their communications would provide WideVoice and Free Conferencing the opportunity to negate any allegation of discrimination. WideVoice is hereby ordered to produce documents responsive to request 1(d) within ten (10) days from the entry of this order.

Qwest asserts that documents responsive to request 1(e) are relevant, because (1) prior counsel admitted the documents were material, (2) WideVoice has an ownership relationship with the largest known FCSC, Free Conferencing, and "[c]ommunications between those two related companies relating to Iowa are clearly relevant," and (3) to the extent WideVoice is interacting with other FCSCs and encouraging them to utilize long distant carriers, such information would be highly germane in demonstrating that Qwest's revenue stream is being directly impacted and that the discrimination is causing damages. (#11). In Qwest's complaint in the Iowa action, it asserts that Free Conferencing, who allegedly created WideVoice as an "intermediate carrier," is a corporation that provides, among other things, "free" conference call services, "free" webinars, "free" international calling, and "free" pre-recorded playback through connections with, or through Iowa telephone numbers assigned to it, by at least the following LEC Defendant[s]: Farmers-Riceville, Great Lakes, Farmers-Riceville (sic), Dixon, and 135. (#1-1). According to the complaint, each of these LEC Defendants provide local exchange carrier services in Iowa. *Id.*

The court finds that communications between WideVoice and *any* FCSC *relating to the state of Iowa* only are relevant to the underlying Iowa action. *Oppenheimer Fund*, 437 U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1. WideVoice is hereby ordered to produce documents evidencing communications (including but not limited to correspondence or other documentation exchanged) between WideVoice and any FCSC relating to the state of Iowa within ten (10) days from the entry of this order.

**2. Request No. 2:** Provide all contracts, agreements or other documentation or understandings or arrangements between you and: a. Any Defendant LEC; b. Any long distance carrier about delivery of calls to a LEC Defendant; c. Any centralized equal access provider in Iowa (such as Iowa Network Services, INS) for ultimate delivery to a LEC Defendant; d. Any LEC in Iowa; and e. Any FCSC. (#4). WideVoice agrees to produce documents responsive to 2(a)-(c), but objects to 2(d) and (e). *Id.* WideVoice asserts the same objections as it did with respect to requests 1(d) and (e). *Id.* For the same reasons as outlined above, the court finds that contracts, agreements, or other documentation or understandings or arrangements between WideVoice and *any LEC in Iowa* and *any FCSC relating to Iowa* are relevant to the Iowa action. *Oppenheimer Fund*, 437 U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1. WideVoice is hereby ordered to produce such documents within ten (10) days from the entry of this order.

**3. Requests Nos. 3-5:** Provide your interstate access tariffs, rate and service schedule (RSSs) or price lists, Iowa access tariffs, RSSs or price lists, and local exchange tariffs, catalogs or price lists. (#4). WideVoice states that it would agree to produce limited responsive materials, such as its interstate access tariffs, Iowa access tariffs, and local exchange tariffs, if any, but objects to the production of its RSSs, price lists, or catalogs. *Id.* WideVoice asserts that since Qwest and WideVoice are "*direct competitors*," such documents constitute confidential financial information and proprietary information. *Id.* As previously stated, Qwest provided WideVoice with a copy of the protective order which gives WideVoice the ability to designate documents "Confidential" or "Attorneys' Eyes Only."

9

(#1-4 Exhibit 25). As signing the protective order will adequately address WideVoice's concerns and negate its objections, the court hereby orders WideVoice to sign the protective order and to produce the documents requested in Nos. 3-5, designating such documents accordingly, within ten (10) days from the entry of this order. See *Bible*, 246 F.R.D. at 619-20

**4. Requests Nos. 6-7:** Provide all documents relating to the volume of traffic that has been routed to or through you for delivery to or from, and the revenues you have billed and/or received from any of the following: a. Any Defendant LEC; b. Any long distance carrier about delivery of calls to a LEC Defendant; c. Any centralized equal access provider in Iowa (such as Iowa Network Services, INS) for ultimate delivery to a LEC Defendant; d. Any LEC in Iowa; and e. Any FCSC. (#4). Wide Voice states that it will produce documents responsive to requests 6(a)-(c) and 7(a)-(c), but objects to producing 6(d) and (e) and 7(d) and (e). *Id.* WideVoice objects on the same grounds as it did with respect to requests 1(d) and (e) and 2(d) and (e). *Id.* For the same reasons as outlined in the sections above, the court finds that documents relating to the volume of traffic that has been routed to or through WideVoice for delivery to or from, or relating to revenues WideVoice has billed and/or received from *any LEC in Iowa* and *any FCSC relating to Iowa* are relevant to the Iowa action. *Oppenheimer Fund*, 437 U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1. WideVoice is hereby ordered to produce such documents within ten (10) days from the entry of this order.

**5. Request No. 8:** Provide all documents relating to the monies you have been billed and/or paid to any of the following: a. Any Defendant LEC; b. Any centralized equal access provider in Iowa (such as Iowa Network Services, INS) for ultimate delivery to a LEC Defendant; c. Any LEC in Iowa; and d. Any FCSC. (#4). WideVoice agrees to produce documents responsive to 8(a) and (b), but objects to 8(c) and (d) on the same grounds as requests 1, 2, 6, and 7. *Id.* For the same reasons as outlined in the sections above, the court finds that documents relating to the monies WideVoice has been billed and/or paid to *any LEC in Iowa* and *any FCSC relating to Iowa* are relevant to the Iowa action. *Oppenheimer Fund*, 437 U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1.

WideVoice is hereby ordered to produce such documents within ten (10) days from the entry of this order.

      **6.    Request No. 10:** Provide all documents relating to any ownership interest, partnership, membership, profit participation, compensation arrangement, or other financial holdings in your entity, including how the ownership has changed over time. (#4).  WideVoice objects to this request, and asserts that the request seeks documents beyond the scope of the Iowa action and is not reasonably calculated to lead to the discovery of admissible evidence. *Id.*   Qwest argues that such information is directly relevant to its allegations of "traffic pumping," as some of the entities allegedly participating in this scheme have "created other companies sharing common or related ownership or financial interests to further their participation in traffic pumping." (#11).  Qwest also asserts that the information would be directly relevant to the conduct of at least defendants Free Consulting and Great Lakes, "both of which have known connections to WideVoice, Inc." *Id.*

     As Qwest alleges that defendants in the Iowa action have created entities, such as WideVoice, to act as "intermediate carriers" in an attempt to cover up the illegal nature of the "traffic pumping" scheme, the court finds that information relating to ownership interest, partnership, membership, profit participation, compensation arrangement, or other financial holdings in WideVoice, including how the ownership of WideVoice has changed over time, is relevant. *Oppenheimer Fund*, 437 U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1.  WideVoice is hereby ordered to produce such documents within ten (10) days from the entry of this order.

      **7.    Request No. 11:** Provide all documents relating to sharing of revenues, marketing fees or commissions (or the contemplation of sharing of revenues, marketing fees or commissions) with providers of telecommunication services in Iowa, including but not limited to: a. Any Defendant LEC; b. Any long distance carrier about delivery of calls to a LEC Defendant; c. Any centralized equal access provider in Iowa (such as Iowa Network Services, INS) for ultimate delivery to a LEC Defendant; d. Any LEC in Iowa; and e. Any FCSC. (#4).  WideVoice objects to this request, and asserts that it is

vague and ambiguous regarding the term "contemplation of sharing of revenues, marketing fees or commissions," and that it "simply does not understand this [r]equest." *Id.* Qwest argues in its reply that the request is self-explanatory, that revenue sharing has become a well recognized term in the traffic pumping industry, and that WideVoice could have raised concerns regarding the inability to understand the language of the request during pre-motion conferring, but failed to. (#11).

The court finds that the request is clear, and orders that if the term "contemplation of sharing of revenues, marketing fees or commission" is ambiguous to WideVoice in any way, WideVoice must confer with Qwest's counsel within five (5) days from the entry of this order in a good faith attempt to clarify the language. WideVoice shall produce documents responsive to this request within ten (10) days from the entry of this order.

**8. Request No. 12:** Provide all documents relating to any plan to share revenues, marketing fees or commissions with: a. Any Defendant LEC; b. Any long distance carrier about delivery of calls to a LEC Defendant; c. Any centralized equal access provider in Iowa (such as Iowa Network Services, INS) for ultimate delivery to a LEC Defendant; d. Any LEC in Iowa; and e. Any FCSC. (#4). WideVoice objects to this request as vague and ambiguous, and asserts that it simply does not understand the term "plan to share revenues, marketing fees or commissions." *Id.* As with the previous request, Qwest argues that the request is self-explanatory, that revenue sharing is a well recognized term, and that WideVoice could have addressed this concern during pre-motion conferring, but failed to. (#11).

The court finds that this request is clear, and orders WideVoice to confer regarding any ambiguity within five (5) days from the entry of this order. WideVoice shall produce documents responsive to this request within ten (10) days from the entry of this order. Request No. 12(e) seeking documents relating to "any FCSC" is limited for the same reasons articulated above by the court, and in response to 12(e), WideVoice is ordered to produce only documents relating to any plan to share revenues, marketing fees or commissions with *any FCSC relating to Iowa. Oppenheimer Fund*, 437

U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1.

**9. Request No. 13:** Provide all documents relating to the rates, terms, conditions under which you obtain collocation from any party including but not limited to: a. Any Defendant LEC; b. Any long distance carrier about delivery of calls to a LEC Defendant; c. Any centralized equal access provider in Iowa (such as Iowa Network Services, INS) for ultimate delivery to a LEC Defendant; d. Any LEC in Iowa; and e. Any FCSC. (#4). WideVoice objects to this request as vague and ambiguous regarding the term "[p]rovide all documents...from *any party.*" *Id.* WideVoice is hereby ordered to produce documents responsive to this request within ten (10) days from the entry of this order, and, to clarify the request, the language "from any party including but not limited to," is modified to read "from the following." Request No. 13(e) seeking documents relating to "any FCSC" is limited for the same reasons articulated above by the court, and in response to 13(e), WideVoice is ordered to produce only documents relating to the rates, terms, conditions under which WideVoice obtains collocation from *any FCSC relating to Iowa. Oppenheimer Fund*, 437 U.S. at 351; *Olde Towne Dev. Group, LLC*, 2009 WL 2021723, *1.

Accordingly, and for good cause shown,

IT IS ORDERED that Qwest Communications Company, LLC's Motion To Compel Subpoenas To WideVoice Communications, Inc. (#1) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that WideVoice shall serve the requested documents in accordance with this order within ten (10) days from the entry of this order.

DATED this 26th day of April, 2012.

_____
**CAM FERENBACH**
**UNITED STATES MAGISTRATE JUDGE**